# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARIA GONZALEZ,

        Plaintiff,

v.                                                   Case No.   8:19-cv-2172-T-23JRK

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION[1]

### I. Status

Maria Gonzalez ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("Administration('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of high blood pressure, asthma, diabetes, thyroid disease, possible gout in her right hand, and anxiety attacks. See Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed November 8, 2019, at 129, 145, 247. Plaintiff filed the DIB application on March 11, 2015, alleging an onset disability date of January 12, 2015. Tr. at 215-16.[2] The application was denied initially, Tr. at 127, 128, 129-42, 163-65, and upon reconsideration, Tr. at 143, 144, 145-62, 169-73.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

[2] Although actually completed on March 11, 2015, see Tr. at 215, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as March 10, 2015, see, e.g., Tr. at 129, 145.

On December 12, 2017, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who represented herself, and a vocational expert ("VE"). Tr. at 48-73. Plaintiff used the services of an interpreter during the hearing. Tr. at 50. Spanish is her first language, Tr. at 68, and she speaks "[v]ery little" English, Tr. at 55. After the hearing, the ALJ received additional evidence in the form of medical records that were shared with Plaintiff; Plaintiff was provided an opportunity to comment on the evidence prior to a decision being rendered. Tr. at 9-10, 378-81. The administrative transcript does not reflect that Plaintiff elected to comment on the new evidence.

The ALJ issued a Decision on May 8, 2018, finding Plaintiff not disabled through the date of the Decision. Tr. at 28-39. After the Decision was entered, Plaintiff obtained a representative. Tr. at 47. The Appeals Council then received additional evidence in the form of a request for review of the ALJ's Decision and a brief authored by Plaintiff's representative. Tr. at 4-5; see Tr. at 212-14 (request for review), 382-83 (brief). On July 8, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On August 29, 2019, Plaintiff commenced this action (through counsel) under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises five issues: 1) whether the ALJ adequately informed the then-pro se Plaintiff of her rights and options regarding representation, especially given that Plaintiff was found by the ALJ to be functionally illiterate; 2) whether Plaintiff was entitled to a hearing and decision by an ALJ who had been constitutionally appointed; 3) whether the ALJ erred in finding Plaintiff can perform light work in light of her diagnoses of

- 2 -

atherosclerosis of the bilateral lower extremity arteries and obesity; 4) whether the ALJ erred at step four by finding Plaintiff could perform past relevant work as a store laborer, as Plaintiff actually performed it; and 5) whether the ALJ erred at step five by finding Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.[3]  Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 22; "Pl.'s Mem."), filed February 26, 2020, at 1-2, 13-25.  On April 24, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 25; "Def.'s Mem.") addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[3] For ease of discussion, the undersigned has rearranged the order of the issues presented by Plaintiff.

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 30-38. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 12, 2015, the alleged onset date." Tr. at 30 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: essential hypertension; bilateral carpal tunnel syndrome (CTS); diabetes mellitus; hypothyroidism; degenerative disc disease; obesity; depression; and generalized anxiety disorder." Tr. at 31 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 31 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday; and she can push/pull as much as can lift/carry. She can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally climb ladders, ropes, or scaffolds. She can frequently handle, finger, and feel with the bilateral hands. [Plaintiff] is limited to frequent exposure to unprotected heights and moving mechanical parts. She is limited to occasional exposure to humidity, wetness, extreme cold, extreme heat, and vibration. [Plaintiff] is limited to simple and routine tasks; she is limited to a work environment where change is infrequent and gradually introduced that is not fast paced or strict quota based work. She is limited to occasional interaction with the general public, coworkers, and supervisors.

Tr. at 33 (emphasis omitted). At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a store laborer" because "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 37 (emphasis and citation omitted). The ALJ then made alterative findings at step five. Tr. at 37. After

- 4 -

considering Plaintiff's age ("46 years old . . . on the alleged disability onset date"), education ("functionally illiterate and unable to communicate in English"), work experience, and RFC, the ALJ found "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform," Tr. at 37-38 (emphasis and citation omitted), such as "small parts assembler," "plastic hospital products assembler," and "electronics worker," Tr. at 38.  The ALJ concluded that Plaintiff was "not under a disability . . . at any time from January 12, 2015, through the date of th[e D]ecision." Tr. at 38 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff raises five issues, only four of which need to be addressed.

### A. Pro Se Representation at Administrative Level

Plaintiff contends the ALJ at the hearing "failed to adequately inform Plaintiff of her rights and options regarding representation." Pl.'s Mem. at 19 (emphasis and capitalization omitted). Especially in light of the ALJ's finding in the Decision that Plaintiff is "functionally illiterate," Plaintiff argues the ALJ erred by not following the Social Security's Hearing, Appeals, and Litigation Law Manual ("HALLEX"), Section I-2-6-52(B), 1993 WL 643033. Pl.'s Mem. at 20. That section refers to Section I-2-1-80(B), 2018 WL 6528001, which states, "An ALJ must ensure that the claimant is aware of his or her options for representation. Specifically, the ALJ will explain the availability of both free legal services and contingency representation, and discuss access to organizations that assist individuals in obtaining representation." Plaintiff concedes, however, that HALLEX is not binding on courts. Pl.'s Mem. at 20. Responding, Defendant contends the ALJ correctly found Plaintiff knowingly waived her right to representation. Def.'s Mem. at 17-21.

The ALJ's decision to conduct the hearing absent counsel for Plaintiff was appropriate only if Plaintiff knowingly and voluntarily waived her right to representation. See 42 U.S.C. § 406; Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995); Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982). However, lack of such waiver only merits reversal of the ALJ's Decision if Plaintiff can also establish prejudice, which requires showing that the ALJ failed to develop a full and fair hearing record. See Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).

When proceeding despite an unrepresented claimant's lack of waiver of counsel, the ALJ's "obligation to develop a full and fair record rises to a special duty," Smith, 677 F.2d at 829, to "scrupulously and conscientiously probe into, inquire of, and explore for all

- 6 -

the relevant facts," id. (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). A showing of prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him [or her] in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his [or her] decision." Kelley, 761 F.2d at 1540; see also Brown, 44 F.3d at 935-36 (reasoning that a "lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits").

Here, the record shows Plaintiff was aware of her right to representation and chose to waive it. First, she received notice in the mail prior to the hearing, albeit in English, explaining her right in detail.[5] Tr. at 180-85, 198-99. In addition to advising Plaintiff about the right to representation, the notice explained what fees may be charged and when, Tr. at 180-81, and it provided a list of dozens of nearby organizations that could assist Plaintiff, Tr. at 182-85. When Plaintiff's hearing began, the ALJ engaged in the following colloquy:

> ALJ: . . . . Ms. Gonzale[z], as you are not represented I must [e]nsure you understand your rights to representation. Did you receive the hearing acknowledgement letter and its enclosures?
>
> [Plaintiff]: Yes, the appointment notice.
>
> ALJ: Did you understand the information contained in the letter concerning your rights to representation?
>
> [Plaintiff]: From what my daughters explained to me, yes. A little bit.

Tr. at 51. The ALJ then clarified the rights for Plaintiff:

> ALJ: The information in the l[e]tter was as follows. You have the right to be represented by an attorney or non-attorney. A representative can help you obtain information about your claim, explain medical terms, help protect your rights, and make any request or give any notice about the proceeding before me. A representative may not charge a fee or receive

---

[5] It appears Plaintiff's daughters helped her with the documents she received from the Administration prior to the hearing. See Tr. at 51 (transcript of hearing).

> a fee unless we approve it. If you appoint a representative you may be responsible for certain expenses such as obtaining and[/]or copying medical records. Some legal organizations offer legal representation free of charge if you satisfy the qualifying requirements of that organization. You also have the right to proceed without a representative. If you do so, I will obtain any relevant medical or non-medical records and question you at the hearing. Do you understand your rights to representation?
>
> [Plaintiff]: Yes.
>
> ALJ: And do you wi[s]h to proceed with or without a representative?
>
> [Plaintiff]: I want to go forward.
>
> ALJ: Okay. As you stated that you wish to proceed without a representative, please let the record reflect that [Plaintiff] has knowingly and voluntarily waived her rights to representation. As you are - - as you are unrepresented, I will ensure that your due process rights are protected and will obtain any additional evidence that might be necessary.

Tr. at 51-52.

Even if the ALJ's colloquy did not perfectly comply with HALLEX's requirement that Plaintiff be advised about contingency representation, the ALJ adequately informed Plaintiff of the right to representation and the availability of free legal services and organizations that could assist Plaintiff. The undersigned finds Plaintiff knowingly and voluntarily waived the right to representation. Alternatively, even if Plaintiff did not waive the right, she has not attempted to demonstrate prejudice that the Eleventh Circuit recognizes. She merely states that the failure to comply with HALLEX "directly prejudiced" her and "violated [her] rights." Pl.'s Mem. at 21. But, the ALJ scrupulously probed for all relevant facts during the hearing; after the hearing, she obtained additional evidence and provided Plaintiff the opportunity to comment on it; and the relevant evidence was before the ALJ when she issued the Decision. The ALJ did not err in this regard.

### B. Hearing and Decision by Constitutionally-Appointed ALJ

Relying primarily on Lucia v. S.E.C., 138 S. Ct. 2044 (2018), Plaintiff argues the ALJ lacked authority to decide Plaintiff's case because the ALJ was not constitutionally appointed pursuant to the Appointments Clause. See Pl.'s Mem. at 22-25. Citing Freytag v. Comm'r, 501 U.S. 868, 879 (1991), Cirko v. Comm'r of Soc. Sec., 948 F.3d 148 (3d Cir. 2020), and Sims v. Apfel, 530 U.S. 103 (2000), Plaintiff asserts her failure to make this argument at the administrative level does not result in forfeiture of that argument before this Court. See Pl.'s Mem. at 23-25. Responding, Defendant does not contend that the ALJ was constitutionally appointed under the Appointments Clause. See Def.'s Mem. at 23-34. Instead, Defendant contends that Plaintiff has waived her Appointments Clause challenge because she failed to raise it at the administrative level. See id.

The Appointments Clause provides that "Officers of the United States" can be appointed only by the President, a court of law, or a head of a department. Lucia, 138 S. Ct. at 2051. In Lucia, the United States Supreme Court held that the ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States" and are thus subject to the Appointments Clause of the United States Constitution. 138 S. Ct. at 2055. The Court stated that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." Id. (quoting Ryder v. United States, 515 U.S. 177, 182-183 (1995)). The Court found that the petitioner had made "such a timely challenge" because "[h]e contested the validity of [the ALJ's] appointment before the [SEC], and continued pressing that claim in the Court of Appeals and th[e] Court." Id. The case was thus remanded for a "new 'hearing before a properly appointed' official." Id. (quoting Ryder, 515 U.S. at 183, 188).

- 9 -

On July 10, 2018, the President of the United States issued an Executive Order stating that "at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause, which governs who may appoint such officials." Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 10, 2018). On July 16, 2018, the Acting Commissioner of Social Security at the time, Nancy A. Berryhill, ratified the appointments of all SSA ALJs. SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019) (citing EM-180003 REV 2, § B).

In Freytag, the Court entertained the petitioners' challenge to the appointment of a Special Trial Court Judge in the Tax Court even though the petitioners had not previously raised the issue before the Tax Court. See 501 U.S. at 878-79. The Court recognized that "as a general matter, a litigant must raise all issues and objections at trial." Id. at 879. But, the Court found that the case was "one of those rare cases in which [the Court] should exercise [its] discretion to hear [the] petitioners' challenge to the constitutional authority of the Special Trial Judge." Id. In making this finding, the Court noted that "the disruption to sound appellate process entailed by entertaining objections not raised below does not always overcome . . . 'the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers.'" Id. (quoting Glidden Co. v. Zdanok, 370 U.S. 530, 536 (1962)).[6]

Here, Plaintiff has waived her Appointments Clause challenge by failing to raise it at the administrative level. To the extent Plaintiff relies on Sims to argue that she did not need to make such a challenge at the administrative level, Sims held only that a claimant need not "exhaust issues in a request for review by the Appeals Council in order to

---

[6] In the end, the Freytag Court rejected the petitioners' claims on the merits. It found that the statute allowing for the appointment of the Special Trial Judge did not violate the Appointments Clause. See 501 U.S. at 892.

- 10 -

preserve judicial review of those issues." 530 U.S. at 112 (emphasis added). The Court expressly stated that it was not deciding whether "a claimant must exhaust issues before the ALJ." Id. at 107. Courts from within the Eleventh Circuit have similarly rejected plaintiffs' reliance on Sims to argue that their Appointments Clause challenges were not waived. See, e.g., Huebert v. Comm'r of Soc. Sec., No. 2:18-cv-761-FTM-MAP, 2019 WL 5206065, at *5 (M.D. Fla. Oct. 16, 2019); Miaolino v. Comm'r of Soc. Sec., No. 2:18-cv-494-FtM-UAM, 2019 WL 2724020, at *7 (M.D. Fla. July 1, 2019); Burr v. Comm'r of Soc. Sec., No. 5:18-cv-518-Oc-18PRL, 2019 WL 3821572, *3-4 (M.D. Fla. May 17, 2019), report and recommendation adopted, No. 5:18-cv-518-Oc-18PRL, 2019 WL 3817486 (M.D. Fla. Aug. 14, 2019), appeal dismissed sub nom., No. 19-14063-EE, 2019 WL 7586528 (11th Cir. Nov. 26, 2019). Moreover, in remanding the case to the SEC, the Court in Lucia observed that the petitioner had made a "timely challenge" because he had previously challenged the validity of the SEC's ALJ before the SEC and the Court of Appeals. 138 S. Ct. at 2055. Here, it is undisputed that Plaintiff did not raise the issue of the ALJ's appointment before the ALJ or the Appeals Council.

Second, Plaintiff's case is not one of "those rare cases" in which forfeiture should be excused. Freytag, 501 U.S. at 879. Indeed, courts within the Eleventh Circuit have rejected as untimely challenges to the constitutionality of SSA ALJs if such challenges were not raised at the administrative level. See, e.g., Fletcher v. Saul, No. 8:19-cv-1476-T-23AAS (M.D. Fla. June 18, 2020), report and recommendation adopted, 2020 WL 4188210 (M.D. Fla. July 21, 2020), Huebert, 2019 WL 5206065, at *5; Parker v. Berryhill, No. 18-14349-CIV, 2019 WL 3097511, at *10-11 (S.D. Fla. July 15, 2019); Miaolino, 2019 WL 2724020, at *7; Wagner v. Berryhill, No. 2:18-cv-285-FTM-UAM, 2019 WL 2724017, at *7-8 (M.D. Fla. July 1, 2019); Vidrine v. Saul, No. CV 1:18-00172-N, 2019 WL 2606852, at *5 (S.D. Ala. June 25, 2019); Jones v. Berryhill, No. 4:18CV503-CAS, 2019 WL

2583157, at *7-8 (N.D. Fla. June 21, 2019); Burr, 2019 WL 3821572, at *4; Valle-Roman v. Comm'r of Soc. Sec., No. 6:18-cv-1158-Orl-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019); Abbington v. Berryhill, No. CV 1:17-00552-N, 2018 WL 6571208, at *6 (S.D. Ala. Dec. 13, 2018). As Chief Judge Merryday of this Court very recently noted, "[t]he weight of district court authority in the Eleventh Circuit, joined by two of the three circuit courts of appeals to address this issue, holds that a petitioner waives a challenge to the constitutionality of an ALJ's appointment by failing to raise the challenge before the Social Security Administration." Fletcher, 2020 WL 4188210, at *1 (footnotes omitted) (citing Davis v. Saul, 963 F.3d 790 (8th Cir. 2020), petition for writ of cert. filed, (U.S.S.C. July 29, 2020) (finding waiver); Carr v. Comm'r, SSA, 961 F.3d 1267 (10th Cir. 2020), petition for writ of cert. filed, (U.S.S.C. June 29, 2020) (finding waiver); Cirko, 948 F.3d at 148 (finding no waiver)).[7]

Further, "permitting claimants to raise untimely challenges would undermine the incentive to raise the issue at the earliest possible time, which would 'encourage the practice of "sandbagging": suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error.'" Burr, 2019 WL 3821572, at *3 (alteration in original) (citation omitted); see also Abbington, 2018 WL 6571208, at *7.[8]

---

[7] The issue is currently on appeal before the Eleventh Circuit in Lopez v. Comm'r of Soc. Sec., 19-11747 (11th Cir.).

[8] On March 15, 2019, the SSA issued SSR 19-1P that "explains how [the SSA] will adjudicate cases pending at the Appeals Council in which [a] claimant has raised a timely challenge to the appointment of an [ALJ] under the Appointments Clause of the United States Constitution in light of the Supreme Court's recent 2018 decision in Lucia . . . ." 2019 WL 1324866, at *1. Specifically, SSR 19-1P directs that a "new and independent review of the claims file" be conducted and the case be remanded "to an ALJ other than the ALJ who issued the decision under review, or [for the Appeals Council] to issue its own new decision about the claim covering the period before the date of the ALJ's decision." Id. at *3.

Based on the foregoing, the undersigned finds Plaintiff has waived any challenge to the constitutionality of the ALJ's appointment.

### C. Light Work Finding

Plaintiff weakly challenges the ALJ's residual functional capacity ("RFC") finding that she is capable of performing light work with additional restrictions. She merely states that she is obese and suffers from atherosclerosis of the bilateral lower extremity arteries with associated pain—she contends these diagnoses, together with her others, "should have been recognized as limiting Plaintiff to only sedentary work." Pl.'s Mem. at 21. Responding, Defendant argues Plaintiff has waived this argument by failing to include citations to specific findings or case law to support it. Def.'s Mem. at 21. Alternatively, Defendant contends a diagnosis alone is insufficient to establish limitations. Id.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

The undersigned agrees that the perfunctory manner in which Plaintiff raises this issue makes it a challenge to discern her point. But, it is clear the ALJ considered both the obesity and atherosclerosis diagnoses about which Plaintiff complains, having specifically addressed them in the Decision and having found the obesity is a severe

impairment while the atherosclerosis is not. Tr. at 31. When the ALJ made the RFC finding that Plaintiff can perform light work with additional restrictions, she discussed the medical evidence in detail and the reasons for the finding. Tr. at 33-37. The undersigned finds no error with respect to the two diagnoses to which Plaintiff now points.

### D. Step Four Finding Regarding Past Relevant Work

Plaintiff challenges the ALJ's finding at step four that she is capable of performing her past relevant work ("PRW") as a store laborer, as she actually performed it. Pl.'s Mem. at 13-16. Citing her work function history report that she filled out prior to the hearing, Plaintiff contends the job required her to lift thirty pounds, which is inconsistent with the ALJ's finding that she can only do light work and lift twenty pounds frequently and ten pounds occasionally. Id. at 14 (citing Tr. at 258); see Tr. at 33 (ALJ's finding). Plaintiff also contends her PRW is inconsistent with the ALJ's finding that she can handle and finger frequently, because Plaintiff stated in her work history report that she had to handle, grab, or grasp big objects five hours per day, and she had to write, type, or handle small objects five hours per day. Pl.'s Mem. at 14 (citing Tr. at 258); see Tr. at 33 (ALJ's finding). Responding, Defendant argues Plaintiff failed to meet her burden at the administrative level to show that she could not perform the demands of her PRW as she actually performed it. Def.'s Mem. at 4-9.

At step four of the sequential inquiry, an ALJ must assess a claimant's RFC and determine whether the claimant can perform his or her PRW. See 20 C.F.R. § 404.1520(a)(4)(iv). "[T]o constitute [PRW], the position in question must have been done within a fifteen year period, lasted long enough for the claimant to learn to do it, and be performed at a substantial gainful activity level." Brown v. Barnhart, 410 F. Supp. 2d 1287, 1297 (S.D. Fla. 2006) (citing, e.g., 20 C.F.R. § 404.1565(a)).

Generally, a claimant will be found "not disabled" if the claimant has the RFC "to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy)[.]" SSR 82-62, 1982 WL 31386, at *3 (S.S.A. 1982). In making this determination, three possible tests may be used. See SSR 82-61, 1982 WL 31387, at *1 (S.S.A. 1982). The first test is whether the claimant retains the ability to perform a past relevant job based on a broad occupational classification of that job; e.g., a "packaging job."[9] Id. The second test looks to whether the claimant retains the capacity to perform the particular functional demands and duties of a past job as he or she actually performed it. Id. at *1-2. For the third test, an ALJ may consider whether the claimant retains the capacity to perform the functional demands and duties of the job as ordinarily required by employers throughout the national economy. Id. at *2. As to the third test, SSR 82-61 notes that "[t]he Dictionary of Occupational Titles (DOT) descriptions can be relied upon – for jobs that are listed in the DOT – to define the job as it is usually performed in the national economy." Id. If the claimant is found to have the capacity to perform a past job under any of these tests, he or she will be found not disabled. Id.

Section 404.1520(e) of the Regulations "'requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of . . . [his or] her PRW to determine whether the individual can still do that work.'" Hawthorne v. Astrue, No. CA 07-0780-C, 2008 WL 2157141, at *3 (S.D. Ala. May 21, 2008) (unpublished) (quoting SSR 82-62, 1982 WL 31386, at *2). When determining whether a claimant has the ability to perform his or her PRW pursuant to one of the tests described

---

[9] This test is not favored due to the vastly different functional demands that may exist in different jobs even though they may be placed in the same generic category. SSR 82-61, 1982 WL 31387, at *1.

- 15 -

above, an ALJ must make the following specific findings:

> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4; see also Levie v. Comm'r of Soc. Sec., 514 F. App'x 829, 831 (11th Cir. 2013) (citing Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)) (noting that "[t]o support a finding that the claimant is able to return to his [PRW], the ALJ must consider all of the duties of that work and evaluate the claimant's ability to perform them in spite of his impairments"). Finally, to aid in making the required findings at steps four and five, an ALJ may pose a hypothetical question to a VE as part of his or her determination of whether the claimant can perform PRW or obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)) (discussing reliance on a VE's testimony at step five); Hines-Sharp v. Comm'r of Soc. Sec., 511 F. App'x 913, 915-17 (11th Cir. 2013) (unpublished) (discussing reliance on a VE's testimony at step four).

Here, the ALJ found Plaintiff's past position as a store laborer "was substantial gainful activity, performed long enough for [Plaintiff] to achieve average performance, and performed within the relevant period." Tr. at 37 (citations omitted). The ALJ further observed that "the [VE] confirmed at the hearing that an individual with [Plaintiff's RFC] would be able to perform this job as performed." Tr. at 37. Ultimately, the ALJ found the testimony consistent with the DOT and "valid and persuasive." Tr. at 37. Plaintiff disagrees with the finding, essentially arguing that the VE's testimony does not constitute substantial evidence because Plaintiff reported in a pre-hearing work history report having greater restrictions than the ALJ found she had. Compare Tr. at 258 (work history report), with Tr. at 33 (ALJ's RFC finding). Read in context with the rest of the record, including

- 16 -

Plaintiff's testimony, the undersigned finds no real conflict in the demands of Plaintiff's PRW and the ALJ's RFC finding.

As to the lifting requirements, while the work history report does state Plaintiff lifted up to thirty pounds at her job, Tr. at 258, at least one other pre-hearing job history report states Plaintiff lifted only ten pounds at the job, Tr. at 249. More importantly, though, Plaintiff's testimony undermines the idea that Plaintiff lifted thirty pounds at the relevant job. Plaintiff testified that the job in question was performed at Target Corporation (a retailer): as of the December 2017 hearing, she was working there and had been for eleven years. Tr. at 55-56. She is currently part of the logistics group, mainly stocking shelves, and works twenty hours per week. Tr. at 55. The ALJ specifically found work performed after January 12, 2015 was not performed at substantial gainful activity levels, Tr. at 30-31, so that finding includes the stocking shelves position. Prior to stocking shelves, Plaintiff "worked in the area of soft lines," Tr. at 56, the position in question. This position involved "more folding clothes, shoes, putting shoes in where they belong, [and] straightening out." Tr. at 56. When asked how much she lifted in this position, Plaintiff responded, "[i]n the area of clothes, it didn't really weigh anything. It doesn't weigh anything. The clothes don't weigh anything." Tr. at 56. Plaintiff's own testimony shows she did not lift more than the RFC finding of twenty pounds occasionally and ten pounds frequently. And, her testimony further shows she was likely conflating the two Target positions when she filled out the work history report. Cf. Tr. at 373 (Plaintiff's work background sheet stating in the logistics position, she "lift[ed] heavy boxes").

Nor is the ALJ's assignment of handling and fingering frequently in the RFC undermined by the requirements of Plaintiff's PRW. Plaintiff's statement in her work history report that she had to handle, grab, or grasp big objects five hours per day, and she had to write, type, or handle small objects five hours per day, Tr. at 258, does not

- 17 -

appear inconsistent with the ALJ's assignment of handling and fingering frequently. And, in another pre-hearing report, Plaintiff reported handling large objects zero hours per day, and writing, typing, or handling small objects zero hours per day. Tr. at 249. On balance, the evidence supports the ALJ's finding in this regard. The ALJ did not err at step four.[10] It is unnecessary to address the ALJ's alternative step-five findings.

### V. Conclusion

For the foregoing reasons, the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**RECOMMENDED**:

1. That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. That the Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** in Jacksonville, Florida on August 3, 2020.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Honorable Steven D. Merryday
Chief United States District Judge

Counsel of Record

---

[10] As part of her step four argument, Plaintiff contends that if the ALJ had found she was incapable of PRW, the ALJ would have had to apply the borderline-age factor and conclude she was disabled pursuant to the Grids. See Pl.'s Mem. at 14-15. Given the undersigned's conclusion that the ALJ did not err by finding Plaintiff capable of performing PRW, this argument need not be addressed.